# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **THERECIA STREET,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 1:19-cv-1967-CLM |
| ) | |
| **ANDREW SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Therecia Street seeks disability, disability insurance, and Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Street's application in an opinion written by an Administrative Law Judge ("ALJ"). Street argues: (1) that the ALJ failed to properly evaluate the opinion evidence from her treating physicians and the Commissioner's consultative examiner, and (2) that the ALJ erred in assessing her subjective pain testimony.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

**I.      Statement of the Case**

    **A.      Street's Disability, as told to the ALJ**

Street was 48 years old at the time of the ALJ's decision. R. 8, 204. Street graduated high school and completed three years of college. R. 242. Her past relevant work was as a medical record and administrative clerk. R. 90–91.

At the ALJ hearing, Street testified that she had back surgery, has persistent hip pain, and takes at least three different pain medications each day. R. 95–98. Street also testified that she sometimes walks with a cane. R. 98.

Because of her hip pain, Street often has to sleep on her stomach or in a recliner. R. 95. And although Street can make her bed and stoop down to pick up things, it is painful. R. 97. Two times before and once after her surgery, Street fell. R. 98. So she always makes sure she is "either riding in a buggy . . . or using [a] buggy to push itself" at the store. R. 98.

    **B.      Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |

| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
|---|---|---|
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Street's residual functional capacity is the most important step here, as all of Street's challenges flow from the ALJ's decision at this juncture.

    **C.**    **Street's Application and the ALJ's Decision**

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Street applied for disability insurance benefits, a period of disability, and SSI in September 2017, claiming that she was unable to work because of various ailments, including degenerative lumbar disc and joint disease, bilateral trochanteric bursitis, piriformis syndrome of the left hip, and rheumatoid arthritis. After receiving an initial denial in December 2017, Street requested a hearing, which the ALJ conducted in November 2018. The ALJ ultimately issued an opinion denying Street's claims in February 2019. R. 8–20.

At Step 1, the ALJ determined that Street was not engaged in substantial gainful activity and thus her claims would progress to Step 2. R. 13.

At Step 2, the ALJ determined that Street suffered from the following severe impairments: degenerative lumbar disc and joint disease, bilateral trochanteric bursitis, and piriformis syndrome of the left hip. R. 14.

At Step 3, the ALJ found that none of Street's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14–15. Thus, the ALJ next had to determine Street's residual functional capacity.

The ALJ determined that Street had the residual functional capacity to perform light work with these added limitations:

- Street cannot climb ladders, ropes, and scaffolds;
- Street can only occasionally climb ramps and stairs;

- Street can only occasionally balance, stoop, kneel, crouch, and crawl;

- Street must avoid concentrated exposure to extreme cold and vibration;

- And Street must avoid all exposure to dangerous machinery and unprotected heights.

R. 15–19.

At Step 4, the ALJ found that Street could perform her past relevant work as a medical records and administrative clerk. R. 19–20. So, without reaching step 5, the ALJ determined that Street was not disabled under the Social Security Act. R. 20.

Street requested an Appeals Council review of the ALJ's decision. R. 1–7. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.  Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155,

1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. Legal Analysis

Street makes two arguments for why the ALJ erred in finding her not disabled. First, Street argues that the ALJ did not properly evaluate the opinion evidence from her treating physicians and the Commissioner's consultative examiner. Second, Street asserts that the ALJ erred in assessing her subjective pain testimony. The court addresses each argument in turn.

### A. The ALJ properly evaluated the opinion evidence.

Street's first argument centers on the ALJ's evaluation of opinion evidence from her treating physicians, Dr. Adeoye Aremu and Dr. Michael Wiedmer, and the Commissioner's consultative examiner, Dr. Anthony Fava. Before addressing the ALJ's specific findings, the court will discuss the legal framework that governs the evaluation of opinion evidence on Street's condition.

1. Applicable legal framework: Street asserts that the ALJ had to afford the opinions of her treating physicians substantial or considerable weight absent good cause to disregard their opinions. But the SSA has recently revised its regulations on the consideration of medical opinions. Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s)" for all claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c(a). Instead, the ALJ should focus on the persuasiveness of the opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but need not, explain how he considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* Street applied for disability, disability insurance benefits, and SSI in September 2017. So the court applies this new standard to the ALJ's evaluation of the opinion evidence.

Under this new standard, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

2. <u>Dr. Aremu</u>: Dr. Aremu is Street's primary care physician. In March 2018, Dr. Aremu wrote a letter on Street's behalf in which he reported that "facet blocks, piriformis shots, and physical therapy" have failed to relieve Street's symptoms. R. 598. He also stated that Street currently was "unable to perform any form of standing and bending for any period of time." *Id.* In August 2018, Dr. Aremu certified that

Street required disability access parking because she is "severely limited in [her] ability to walk due to an arthritic, neurological, or orthopedic condition." R. 652.

The ALJ found Dr. Aremu's March 2018 statement unpersuasive for two reasons: (1) he partially supported the statement with an understanding that Street had stopped working because of her symptoms when the evidence shows that she left her last job because of a layoff, and (2) his opinion contradicted the record as a whole, which showed Street had a generally positive outcome from her April 2018 decompression surgery. R. 18. The ALJ found Dr. Aremu's August 2018 statement vague and conclusory. *Id.* The ALJ also concluded that this statement was not a medical opinion because it included no discussion as to what Street could do despite her impairments. *See id.* (citing 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2)).

Street argues that the ALJ erred in finding that Dr. Aremu's belief that Street had stopped working because of her symptoms improperly influenced his opinion. As Street notes, she testified at the ALJ hearing that she was on medical leave at the time of the layoff. R. 92–93. But Street also testified that after her company laid her off she began looking for work and filed for unemployment benefits. R. 86, 91–93. Street then received thousands of dollars in unemployment benefits in 2018. R. 235. A reasonable person could view this evidence as inconsistent with Dr. Aremu's statement that Street quit her job because of her symptoms. So substantial evidence

supports the ALJ's decision to discount this supporting explanation for Dr. Aremu's opinion.

Street also asserts that the ALJ erred in finding treatment records from after her April 2018 decompression surgery inconsistent with Dr. Aremu's opinion. In support of this argument, Street points out that Dr. Wilson, her neurosurgeon, consistently noted that Street reported that her pain was about the same as it had been preoperatively and that he was disappointed that she had not made further progress. R. 700–05. Street also notes that records from her pain management doctors show that she often rated her pain between 7 and 10 on a 1 to 10 scale. R. 633. And the treatment notes from Street's pain management doctors show: (1) she often complained of the inability to sit or stand for prolonged periods; (2) following her surgery, she had consistent diagnoses of lumbago, lumbar radiculitis of the left lower extremity, and chronic pain syndrome; and (3) her doctor regularly prescribed her Belbuca, a medication used to treat severe pain. R. 655–65.

But other medical records suggest that Street had a successful surgery. For example, in May 2018, Street's strength was 5+, her gait was steady, and her sensation was intact. R. 702. And a postoperative MRI revealed normal findings. R. 669, 686, 703. In June 2018, Street had only mild left lumbar tenderness, her straight leg raise was negative, her strength was intact, and her gait was steady. R. 705. And in August 2018, Street's exam revealed a non-antalgic gait; normal sensation; full

muscle strength; normal bulk, tone, and coordination; and no motor abnormalities. R. 656, 689. At her October 2018 examination, Street again had no motor abnormalities, normal sensation, and a non-antalgic gait. R. 713. Street also reported at that exam that "her pain is relieved by 70% by taking medications." R. 712.

The ALJ clearly considered Street's post-surgery treatment records when making the residual functional capacity assessment. R. 17–18. And it is not this court's function to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Having reviewed these treatment notes, the court finds that a reasonable person could conclude, as the ALJ did, that they conflict with Dr. Aremu's March 2018 opinion. So substantial evidence supports the ALJ's finding that Dr. Aremu's opinion contradicted these medical records.

Finally, Dr. Aremu provided no supporting explanation for his statement that Street was "severely limited in [her] ability to walk due to an arthritic, neurological, or orthopedic condition." R. 652. So the court sees no error in the ALJ's finding that this opinion was unpersuasive. *See* 20 C.F.R. § 404.1520c(c)(1). Substantial evidence supports the ALJ's assessment of Dr. Aremu's opinions.

3. <u>Dr. Wiedmer</u>: Dr. Wiedmer is Street's orthopaedist. He reported in October 2017 that he was skeptical that Street could return to her prior job. R. 554. He also stated that Street was limited to lifting only 25 pounds with limited ability to stoop

10

and no ability to climb. *See id.* And he determined that Street would need frequent seated breaks every two to three hours. *See id.* In March 2018, Dr. Wiedmer wrote a letter on Street's behalf in which he stated that her "conditions are chronic and recurrent and despite treatment will likely give her continued difficulty and at present she is unable to do her job despite trying to do so . . . ." R. 599.

The ALJ recognized that Dr. Wiedmer supported his October 2017 statement with a May 2017 MRI of Street showing degenerative changes, Street's subjective pain allegations, and Wiedmer's examination of Street that showed positive straight leg raising on the left and lumbar tenderness. R. 18. But the ALJ found Dr. Wiedmer's opinion inconsistent with Street's positive outcome from her decompression surgery. *See id.* The ALJ also found that Dr. Wiedmer's statements on whether Street could return to her job were opinions "as to an issue reserved to the commissioner." R. 19.

For the same reasons why substantial evidence supports the ALJ's determination that Dr. Aremu's opinion evidence contradicts Street's post-surgery treatment records, substantial evidence supports the ALJ's finding that these medical records conflict with Dr. Wiedmer's opinion. And the ALJ correctly found that Dr. Wiedmer's statements about whether Street could return to work or do her job were statements on issues reserved for the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3)(i). So these statements were "inherently neither valuable nor

11

persuasive." 20 C.F.R. § 404.1520b(c). The court finds no reversible error in the ALJ's evaluation of Dr. Wiedmer's opinion evidence.

4. <u>Dr. Fava</u>: Dr. Fava is a consultative examiner who examined Street in November 2017. Dr. Fava determined that Street can sit, stand, or walk for less than 30 minutes and cannot lift anything weighing over 3 pounds. R. 568. He also found that Street was unable to travel. *Id.* The ALJ found Dr. Fava's opinion unpersuasive because it: (1) appeared to be mainly grounded in Street's "subjective allegations of her limitations," and (2) was inconsistent "with his examination [and] the record as a whole." R. 18.

The court agrees with the ALJ that Dr. Fava's opinion that Street cannot stand for more than 30 minutes or lift anything weighing over 3 pounds appears to stem from Street's subjective statements, not objective medical findings. *See* R. 566–68. Dr. Fava also failed to support his sitting limitation with his own examination because his notes reflect no complaint or objective finding of a sitting issue. R. 566–67. And a reasonable person could agree with the ALJ that Dr. Fava's opinion conflicts with (1) his findings that Street had 4/5 motor strength and no atrophy, and (2) Street's post-surgery medical records. So the court finds that substantial evidence supports the ALJ's determination that Dr. Fava's opinion is unpersuasive.

\* \* \*

In summary, the ALJ applied the correct legal standards by evaluating the opinion evidence's supportability and consistency. And the court finds that the ALJ's evaluation of this evidence is supported by substantial evidence. The ALJ did not, as Street argues, substitute his judgment for that of the medical professionals. Instead, he permissibly resolved conflicting medical evidence by finding the opinion evidence unpersuasive. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). As a result, the court finds no error in the ALJ's assessment of the opinion evidence in the record.

### B.     The ALJ properly applied the pain standard.

Street next argues that the ALJ erred in discrediting her subjective pain testimony. When a claimant relies on subjective testimony regarding pain to support a disability claim, the ALJ must apply the two-step "pain standard":

1. The claimant must present "evidence of an underlying medical condition"; and, if he does,

2. The claimant must either

    a. Present "objective medical evidence confirming the severity of the alleged pain," or

    b. Show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). When an ALJ refuses to credit the claimant's subjective pain testimony, "he must articulate explicit and

adequate reasons" for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

At the ALJ hearing, Street testified that she cannot work because of persistent back pain both before and after her April 2018 surgery. R. 94–95. She also asserted that she had pain in her hip and that her surgery afforded her little relief. R. 95. And Street stated that her pain required her to sleep on her back or in a recliner. *Id.*

The ALJ found that Street's medically determinable impairments could reasonably be expected to cause these alleged symptoms. R. 16. But the ALJ determined that Street's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical and non-medical evidence in the record. *Id.*

Having reviewed the medical records and the non-medical evidence cited by the ALJ, the court finds that substantial evidence supports the ALJ's credibility determination. As discussed above, several of the treatment notes following Street's surgery suggest a positive outcome from surgery. And a reasonable person could view the fact that Street accepted unemployment benefits and sought work after being laid off to contradict her subjective pain testimony. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (affirming ALJ's credibility finding when she explained that claimant's receipt of unemployment benefits cast doubt on his position that he was disabled and unable to work). So even though the

court may have made a different credibility determination than the ALJ, the ALJ did not reversibly err. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [Street's] testimony, but whether the ALJ was clearly wrong to discredit it.").

### IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

**DONE** this December 17, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE